## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DICK ANTHONY HELLER, et al.** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 22-cv-1894 DRF |
| | ) |
| **DISTRICT OF COLUMBIA, et al.** | ) |
| | ) |
| Defendants. | ) |
| ——————————————————— | ) |

## PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSION OF TIME

Plaintiffs submit their partial opposition to the Defendants' motion for a 90-day extension of time to respond to Plaintiffs' application for a preliminary injunction.

Plaintiffs' – out of curtesy – agreed to a 30-day extension for Defendants to file their response to Plaintiffs' application for a preliminary injunction in this case, provided Plaintiffs were granted a similar period of time to reply to Defendants' response. Defendants' request for a 90-day extension is unnecessary, unreasonable and prejudicial to Plaintiffs.

Defendants cite *New York State Rifle & Pistol Association v. Bruen,* 597 U.S. __, Case No. 20-843, slip op. (June 23, 2022) as the basis for their needing to accomplish a historical review to support DCMR 24-2343.1's limitation on the amount of ammunition a concealed carrier may carry for his registered handgun when carrying pursuant to a District of Columbia issued concealed pistol license. However, the historical test was first announced in District of Columbia v. Heller, 554 U.S. 570 (2008), not in *Bruen*. This was confirmed by the D.C. Circuit in *Wrenn v. District of Columbia*, 684 F.3d 650, 657-61 (D.C. Cir. 2017). So, it should have been no surprise to the District that it is required to justify DCMR 24-2343.1 based on the Second Amendment's text, and the history and tradition of firearms regulation in the United States. Indeed, the Attorney General

should in light of *Wrenn,* have been conducting a detailed review of the gamut of the District's firearms regulatory scheme to ascertain the Constitutionality of the myriad of the District's severe limitations on the Second Amendment rights of its citizens. Apparently the Attorney General choose not to do so.

Moreover, to the extent *Wrenn* did not serve to put the District on notice that it would have to support with an historical analysis its various firearms regulations, it was plainly obvious from the *Bruen* oral argument how *Bruen* would be decided. And even if *Heller, Wrenn* and the *Brien* oral argument were not sufficient to put DC on notice that it would have to justify its firearms regulation under the text, history and tradition standard, the *Bruen* decision certainly did. The Attorney General should have immediately commenced its examination of history in anticipation of the litigation it plainly knew was coming concerning the District's stringent firearms regulation, and that will in all likelihood mushroom.

Beyond that, however, as we explained in our application for preliminary injunction, in adopting the regulation in question, the Chief proffered no justification whatsoever for the regulation. Thus, even if the District could show that it was common at the time of the adoption of the Second Amendment (or at the time of the adoption of the Fourteen Amendment) to limit the amount of ammunition that law abiding citizens could carry for their self-defense – good luck with that – the Chief's failure to provide any justification for his adoption of the ammunition limit would nonetheless likely doom the regulation as simply an arbitrary and capricious limitation lacking even a rational basis.

Nonetheless, we believe the District is entitled to proffer an historical analysis to attempt to show that the regulation is consistent with the nation's historic tradition of firearms regulation. However, the District does not need 90 days to attempt that showing. Plaintiffs filed their action

on June 30, 2022, within seven days of *Bruen's* release and made it clear that the District would have to make the text, history and tradition showing *Bruen* requires.  Apparently the District made no effort to commence making that showing before now. It has now been three weeks since *Bruen* was released and two weeks since Plaintiffs' complaint was filed.  The Attorney General has virtually unlimited resources compared to Plaintiffs.  Indeed, other than the Attorney General himself, six separate attorneys have noted their appearance in this proceeding for Defendants. Surely, this squad of experienced legal talent are capable of turning out a professional product within the 30-day extension to which Plaintiffs have consented. This is especially the case given the extensive degree of historical evidence that has been submitted to the Supreme Court in the *Heller, McDonald*, 561 U.S. 742 (2010) and *Bruen* cases, and the substantial historical commentary concerning the nation's history of firearms regulation available to Defendants. Other than vague references, Defendants have failed to set forth any detailed discuss of exactly what it is that will require 90 days for them to prepare their response to the preliminary injunction request.

Defendants do argue the need for expedited discovery on standing and irreparably harm to support their requested 90-day extension.  That has nothing to do with making a historical showing to support the regulation in question. Moreover, it is a blatant red herring. Plaintiffs' standing is clear and known to Defendants. Individual Plaintiffs hold licenses to carry concealed handguns in the District. The District knows this and has the requisite documentation. No need for discovery on that. The District knows what guns the Plaintiffs have registered. The District knows the capacity of those guns. Plaintiffs' have averred under oath they would carry more ammunition than allowed under the regulation if the regulation is declared unconstitutional and enjoined. What possible discovery is necessary under those circumstances? Defendants are silent in that regard.

Plaintiffs are burdened by this regulation every time they exercise their right to be armed in public the District of Columbia. Discovery on standing would accomplish nothing.

Defendants have also not explained what discovery is necessary on the issue of irreparable harm. Defendants are free to argue the lack of irreparable harm in their response.  However, the law is solidly against them as we noted in our preliminary injunction application.  There we pointed out,

> Where the defendant's actions violate the plaintiff's constitutional rights the requirement of "irreparable injury" is satisfied. As the D.C. Circuit has explained, "[s]uits for declaratory and injunctive relief against the threatened invasion of a constitutional right do not ordinarily require proof of any injury other than the threatened constitutional deprivation itself." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (brackets omitted) (hereinafter *"Gordon"*) (quoting *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998)). Thus, "although a plaintiff seeking equitable relief must show a threat of substantial and immediate irreparable injury, a prospective violation of a constitutional right constitutes irreparable injury for these purposes." *Id.* (brackets omitted) (quoting *Davis*, 158 F.3d at 1346). *See also Berg v. Glen Cove City School District,* 83 F.Supp. 651 (E.D.N.Y. 1994); *Doe v. Shenandoah County School Board,* 737 F.Supp. 913 (W.D.Va. 1990); *Joynes v. Lancaster,* 553 F.Supp. (M.D.N.C. 1982).

*See Elrod v. Burns.* 427 U.S. 347, 373 (1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (applying *Elrod* to Second Amendment violations). Defendants make no showing why the court should ignore the weight of this precedent.

That Plaintiffs have suffered this unconstitutional burden on their Second Amendment rights since they received their licenses is no basis for Defendants to assert the lack of irreparable injury as Plaintiffs will continue to suffer injury for as long as the regulation remains enforceable. Every day they suffer this unconstitutional restriction on their Second Amendment rights is a new and substantial injury; and the ramifications should they be in a position to need more ammunition

than the District allows them to carry are potentially catastrophic. Plaintiffs are thus prejudiced by delay in resolution of this proceeding, which is why they are seeking preliminary relief.

In short, the Defendants have not justified the need for a 90-day extension of time to respond to the preliminary injunction, and their request in that regard should be denied.

Respectfully submitted

**DICK ANTHONY HELLER**

**CHARLES NESBY**

**HELLER FOUNDATION**

By: /s/ George L. Lyon, Jr.
George L. Lyon, Jr. (D.C. Bar No. 388678)
Arsenal Attorneys
1929 Biltmore Street NW
Washington, DC 20009
202-669-0442, fax 202-483-9267
gll@arsenalattorneys.com

Matthew J. Bergstrom (D.C. Bar. No. 989706)
Arsenal Attorneys
4000 Legato Road, Suite 1100
Fairfax, VA 22033
800-819-0608
mjb@arsenalattorneys.com

*Attorneys for Plaintiffs*

Dated:  July 14, 2022

### CERTIFICATE OF SERVICE

I, George L. Lyon, Jr., a member of the bar of this court, certify that I served the foregoing document on all counsel of record for Defendants through the court's ECF system, this 14th day of July, 2022.

/s/ George L. Lyon, Jr., DC Bar 388678